IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JASON CARR,

        Plaintiff,

v.

ESTES EXPRESS LINES,

        Defendant.

Case No. 14-CV-2284-DDC-GLR

## MEMORANDUM AND ORDER

Plaintiff Jason Carr brings this employment termination case against his former employer, defendant Estes Express Lines. Plaintiff asserts claims of race and color discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. 25) against each of plaintiff's claims. For the reasons explained below, the Court grants defendant's motion.

    **I.**    **Pro Se Litigant's Compliance with Local Rules**

Before reaching defendant's motion, the Court addresses plaintiff's failure to comply with the local rules governing summary judgment motions. D. Kan. Rule 56.1(f) requires that "[a]ny represented party moving for summary judgment against a party proceeding pro se must serve and file as a separate document . . . [a] 'Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment' with the full texts of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 attached." Defendant sent the pro se plaintiff the notice required by Rule 56.1. *See* Doc. 27. Defendant's notice advised plaintiff that if he did "not respond to the motion for summary judgment on time with affidavits or documents contradicting the material facts asserted by the

1

defendant, the court may accept defendant's factual allegations as true, in which event [plaintiff's] case may be dismissed and judgment entered in defendant's favor without a trial." *Id*. at 2.

Plaintiff filed a document titled "Response on Behalf of Defendant's Motion for Summary Judgment" (Doc. 32). Plaintiff's Response never controverts the facts asserted by defendant in its Memorandum in Support of Summary Judgment (Doc. 26), as required by the Court's local rules. D. Kan. Rule 56.1(a) provides, "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." The opposing party's memorandum in opposition must "begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists" and "refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed." D. Kan. Rule 56.1(b)(1). Plaintiff's Response complies with none of these local rules.

Instead, the Response explains that plaintiff contacted some of defendant's employees informally to request that they provide statements on his behalf. Plaintiff asserts that those employees were unwilling to provide statements and that he has "been avoided, given the run around[,] and [has] now [run] out of time." Doc. 32 at 1-2. Thus, plaintiff asks the Court "to gain proper statements from employees that were present during [the] altercation, since [he] [was] unable to contact the proper individuals such as the Dock Supervisors that were present." *Id*. at 2. Plaintiff also has attached five letters written by his friends and family members to his Response. The unsworn letters praise plaintiff's character, but they do not contain admissible information germane to plaintiff's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ."); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

While plaintiff is a pro se litigant and the Court must construe his filings liberally, the Court will not serve as his advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013) (citations omitted). Plaintiff had adequate time to conduct discovery and gain admissible evidence supporting his claim. And the Court's Scheduling Order informed plaintiff of his right to serve up to 30 interrogatories and 30 requests for admissions on defendant as well as his right to take 10 depositions before discovery closed on March 23, 2015. *See* Doc. 20. Plaintiff failed to use any of these formal discovery mechanisms; opting, instead, to contact a number of defendant's employees directly to request that they provide evidence supporting his case. The Court cannot conduct discovery on plaintiff's behalf or compel persons to respond to informal requests for information. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (citations and internal quotation marks omitted)); *see also Elrod v. Walker*, No. 06-3115-SAC, 2011 WL 6372881, at *6 n.3 (D. Kan. Dec. 20, 2011) ("Although the Court affords some leeway to pro se parties, it cannot merely overlook Plaintiff's failure to state and oppose material facts in compliance with the local rules, and Plaintiff's failure to submit admissible evidence . . . ."). Because plaintiff has failed to controvert defendant's facts, the Court considers those facts admitted and accepts them as true. The Court thus must analyze plaintiff's claims and defendant's motion in light of the following uncontroverted facts.

## II. Uncontroverted Facts

The following facts have been stipulated by the parties in the Pretrial Order (Doc. 35) or are uncontroverted and stated in the light most favorable to plaintiff as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### *Plaintiff's Employment*

Plaintiff is African-American and worked for defendant at its shipping terminal in Kansas City, Kansas, from May 5, 2009, until his termination on March 10, 2014. Defendant hired plaintiff as a full time dockworker. And while employed by defendant, plaintiff reported directly to dock supervisors Jeff Robinson and Gonzo Equia. Those men, in turn, reported to defendant's Kansas City terminal manager, Joe Straws. Mr. Straws and Mr. Robinson are African-American. Mr. Equia is Hispanic. At his deposition, plaintiff testified that he enjoyed working for defendant, had a good relationship with his supervisors, and received positive performance evaluations.

In March 2014, defendant promoted plaintiff to work as a "lead man" on its loading dock. In that position, plaintiff would oversee and direct 15 to 20 dockworkers while they loaded and unloaded freight. Lead man is a supervisory position and required plaintiff to enforce defendant's Code of Conduct Policy and report any violations to management.

### *Defendant's Code of Conduct Policy*

Defendant's Code of Conduct Policy lists a number of prohibited actions that may "subject an employee to disciplinary action, up to and including suspension without pay and discharge." Doc. 26-3 at 2. The policy, in relevant part, forbids employees from:

- Creating a Disturbance or Disruption—fighting or assaulting anyone on company property, in company equipment or during work time.

- Harassment—on the basis of sex, race, color, religion, age, disability, national origin, veteran's status or any other protected status. Including the use of threatening, abusive, vulgar or profane language. Comments—oral or written, or actions of a sexual, racial or other discriminatory nature.

- Disorderly, Offensive, Immoral or Improper Conduct—with other employees, customers or the general public on company property, equipment or time. Including the failure to treat with respect and courtesy our customers and others with whom we work and do business.

*Id.* at 3 (bolding and underlining omitted).

The policy also provides that defendant may discharge an employee for a single violation of this policy "with or without prior warning." *Id.* at 2. Plaintiff signed a form acknowledging that he received, read, and understood the policy on two occasions—first, when defendant hired him on May 5, 2009, and, again, on July 27, 2010. *See* Doc. 26-4.

### *Plaintiff's March 6, 2014 Confrontation With Ismael Reyna*

Plaintiff's first shift serving as lead man occurred on March 6, 2014. Plaintiff arrived at defendant's terminal at 4:00 p.m. that day to work a shift ending at 4:00 a.m. the next morning. The dockworkers, plaintiff, Mr. Robinson, and Mr. Equia gathered for a meeting when the shift began. There, Mr. Equia announced that defendant had promoted plaintiff to lead man.

Between 6:00 and 6:45 p.m., Mr. Robinson asked plaintiff to use a forklift to retrieve "some hot freight" that needed to be loaded quickly into a waiting truck. Doc. 26 at 7. Plaintiff accepted the assignment, boarded a forklift, and began to drive toward the freight. But on his way, plaintiff heard Ismael Reyna, a Hispanic dockworker, "blurt out naming-calling." Doc. 26-1 at 59. Plaintiff does not recall the exact phrase Mr. Reyna used, but he contends that Mr. Reyna taunted him, yelling, "'I don't know why you're,' something." *Id.* Plaintiff stopped and retorted: "Well, obviously you couldn't handle the position. That's why they chose me." *Id.*

Plaintiff memorialized the remainder of his confrontation with Mr. Reyna in a handwritten report that he prepared for Mr. Straws the next day. Plaintiff's report, in relevant part, describes the exchange as follows:

> He said: You're an asshole!
>
> I said: You're an asshole too!
>
> He then said: I don't [know] why you hostling or being a lead man, you don't want to be here.
>
> I said: Well you must not have been doing the job right, so they asked me to do it.
>
> Then [h]e said: You're a bitch!
>
> I said: You're a bitch too!
>
> He said: You're a bitch!
>
> I said: You're a bitch too, bitch!
>
> He said: Fuck you JC, I'm [going to] fuck you up when I see you in the streets!
>
> I then said: Fuck you too, why wait[,] let[']s go now! We don't have to go later[,] let[']s do this now! Let's get it over with. If you want some[,] come get it!
>
> Then he said: Oh[,] Oh[,] Oh[,] did you hear that Gonzo[?] [T]hat was a threat! He just threatened me! I want something done about that!
>
> I said: Shut up, you're [a] fucking stupid man[.] [Y]ou started this shit and now you [want to] say I'm threatening you! You fucking started it!
>
> He said: I'm [going to] fuck you up JC!

Doc. 26-7 at 2. Plaintiff's report characterized Mr. Reyna as a bully and described his frustration with Mr. Reyna before the March 6 confrontation:

> Ismeal has been [lashing] out a lot the past couple of months. There was another incident between Ismeal and Roy that wasn't reported. Also[,] another incident [where] Ismeal jumped off his forklift and proceeded to poke his finger in the throat of Mike Castro[,] another dock associate. His [lashing] out,

6

> [bullying], intimidating, and [ostracizing] [tactics] have to stop. I wasn't and will not ever let any man disrespect me when I was only doing what I was told to do.
>
> . . . .
>
> At the same time[,] Ismeal has always tried to provoke or push me to the next level and I had enough of his [bullying]! I don't and won't bully or put other people down for any reason. We are all here to do a job and get it done so we can all go home to our families.

*Id.* at 3-4.

Mr. Equia and the assistant terminal manager, Bill Herdman, heard the confrontation and moved to separate Mr. Reyna and plaintiff. Mr. Equia escorted Mr. Reyna inside of defendant's terminal. And Mr. Herdman led plaintiff into a separate office. Once inside, plaintiff told Mr. Herdman: "Bill, I know I shouldn't have done this. It was unprofessional, but I had enough." Doc. 26 at 10. Plaintiff also said, "I know I could have walked away and I should have, but I had enough." *Id.* After reporting the confrontation to Mr. Straws, Mr. Equia sent plaintiff and Mr. Reyna home at 11:00 p.m.—five hours before the end of the shift. Mr. Equia directed both men to return to work the next morning to meet with Mr. Straws and give a written statement about the incident.

On March 7, 2014, plaintiff and Mr. Reyna met separately with Mr. Straws. After receiving written statements describing the confrontation, Mr. Straws placed both men on administrative leave pending an internal investigation. Plaintiff did not speak with defendant's management while on leave.

At his deposition, plaintiff testified that his confrontation with Mr. Reyna was loud and disruptive. He also testified that that both men used profanity and threatened each other with physical violence. Plaintiff acknowledged that his behavior violated defendant's Code of Conduct Policy, which prohibits fighting, creating a disturbance in the workplace, or engaging in

7

"disorderly, offensive, immoral[,] or improper conduct" with other employees. Doc. 26-3 at 3. Plaintiff testified that he suspects Mr. Reyna initiated the confrontation because Mr. Reyna was jealous of plaintiff's promotion to lead man. According to plaintiff, no one at the terminal or employed by defendant mentioned his race or color during or after the argument.

### *Plaintiff's Termination*

Defendant terminated plaintiff's employment on March 10, 2014. Mr. Straws made the decision to terminate plaintiff after consulting with Montell Maners, defendant's human resources manager. Based on a report from Mr. Equia and the written statements prepared by plaintiff and Mr. Reyna, Mr. Straws determined that plaintiff "had engaged in unacceptable, disorderly, offensive, profane, immoral, and threatening conduct and disruption of production." Doc. 26-2 at 5. Mr. Straws testified that plaintiff's behavior violated the Code of Conduct Policy and "[u]nder the company's consistently applied practices, such conduct required termination of employment." *Id*. Mr. Straws also terminated Mr. Reyna on the same day for the same reasons.

Mr. Straws shared his termination decision with plaintiff on March 10, 2014. He explained that he had terminated plaintiff's employment for disrupting the workplace in violation of the Code of Conduct Policy. Plaintiff agreed at his deposition that the March 6, 2014 confrontation with Mr. Reyna was the true reason that defendant terminated his employment. *See* Doc. 26 at 15-16.

### III.   Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute [about] any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625

8

F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245-46 (10th Cir. 2010)).  A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248-49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992)).  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips*

*v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)).  To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."  *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Summary judgment is not a "disfavored procedural shortcut."  *Celotex*, 477 U.S. at 327.  To the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1).

**IV.   Analysis**

Defendant moves for summary judgment against plaintiff's claims of race and color discrimination and retaliation under Title VII.  The Court analyzes both of these claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) ("[W]e analyze a retaliation claim under the *McDonnell Douglas* burden-shifting framework."); *Curry v. Okla. Gas & Elec. Co.*, 730 F.2d 598, 601 (10th Cir. 1984) ("[T]he Supreme Court established the burden of proof rules applicable to Title VII discrimination suits in *McDonnell Douglas Corp. v. Green* . . . .").  Where there is no direct evidence of discrimination and retaliation, plaintiff may rely on circumstantial evidence to prove his claims within the *McDonnell Douglas* analysis.  *See Stover*, 382 F.3d at 1075-76; *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000) ("The Supreme Court set forth the framework for assessing circumstantial evidence of discrimination in *McDonnell Douglas* . . . .").

The *McDonnell Douglas* framework uses a three-step, burden-shifting analysis.  First, plaintiff must establish a prima facie case.  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (citing *McDonnell Douglas*, 411 U.S. at 802).  If plaintiff meets his initial burden and establishes a prima facie case, then the burden shifts to defendant to advance a legitimate, non-

discriminatory reason for its adverse employment decision.  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802-03).  "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact whether the employer's proffered reason for the challenged action is pretextual—*i.e.* unworthy of belief."  *Id.*

Defendant argues that plaintiff's claims fail under the *McDonnell Douglas* analysis for two reasons.  First, defendant contends that plaintiff cannot establish a prima facie case to support either of his two claims.  Second, even if plaintiff could establish a prima facie case, defendant asserts that it has articulated a legitimate, non-discriminatory reason for plaintiff's termination.  Defendant contends that plaintiff cannot show that there is a genuine issue of material fact whether defendant's proffered reason is pretextual.  The Court addresses each of defendant's arguments, in turn, below.

### A. Plaintiff's Prima Facie Case

The *McDonnell Douglas* framework places the initial burden of proof on plaintiff.  Here, plaintiff must present a prima facie case of race and color discrimination and retaliation.  The elements required to establish a prima facie case are flexible and "may differ according to differing fact situations."  *Mohammed v. Callaway*, 698 F.2d 395, 398 (10th Cir. 1983) (citing *McDonnell Douglas*, 411 U.S. at 802 n.13).  And the burden at the prima facie stage is "not [an] onerous" one.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Plaintiff only must present facts to support an inference of discrimination, *Mohammed*, 698 F.2d at 398, he need "'not dispel the non-discriminatory reasons subsequently proffered by the defendant.'"  *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000)).  Here, defendant contends that the Court must grant its motion for summary judgment because plaintiff cannot establish a prima

11

facie case of race or color discrimination or retaliation. The Court addresses defendant's arguments against each of plaintiff's two claims in the subsections below.

### 1. Plaintiff cannot establish a prima facie case of race or color discrimination under Title VII.

Plaintiff alleges that defendant discriminated against him because he is an African-American with a dark skin tone. Doc. 1 at 3. To establish a prima facie case of race or color discrimination under Title VII, plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for his position and doing satisfactory work; and (4) defendant treated him less favorably than others not in the protected class. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Carpenter v. Sw. Bell Tel. Co.*, No. 12-2483-CM, 2013 WL 6004171, at *4 (D. Kan. Nov. 13, 2013). Defendant does not dispute that plaintiff can satisfy the first and second elements of a prime facie case—*i.e.*, that plaintiff is a member of a protected class and that defendant's termination of his employment was an adverse employment action. But defendant contends that plaintiff cannot establish the third or fourth requirement because he has failed to show that he was qualified for his position or that defendant treated similarly situated employees better than it treated him.

The Tenth Circuit has held that "an employer may decide an employee's failure to follow the employer's policies renders the employee unqualified for [his] position, as long as the employer applies its policies evenhandedly to members of all races." *Banks v. KCTV-5*, 982 F.2d 528, 1992 WL 372581, at *3 (10th Cir. Dec. 17, 1992) (unpublished table opinion) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 (1976)). At this stage of the *McDonnell Douglas* analysis:

> a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that [he] continued to possess the objective qualifications [he] held when [he] was hired, or by [his] own testimony that [his] work was

satisfactory, even when disputed by [his] employer, or by evidence that [he] had held [his] position for a significant period of time.

*Id.* (quoting *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) (internal citations omitted), *abrogated on other grounds by Randle*, 69 F.3d 441).

The summary judgment facts show that plaintiff engaged in a loud, profane, and disruptive confrontation with a subordinate and was sent home before the end of his first (and only) shift as a lead man. In his position, plaintiff was responsible for supervising dockworkers, ensuring that they complied with the Code of Conduct Policy, and reporting policy violations to management. The policy that defendant charged plaintiff to enforce prohibited employees from fighting or otherwise creating a disturbance on company property. It also required employees to treat each other "with respect and courtesy," and it also forbade them from engaging in disorderly, offensive, immoral, or improper conduct. Doc. 26-3 at 3.

Here, it is undisputed that plaintiff failed to meet his responsibilities as a lead man. Plaintiff's position required him to follow and enforce the Code of Conduct Policy. But the summary judgment facts reveal that plaintiff violated the Code of Conduct Policy when he engaged with Mr. Reyna in a loud and profane confrontation. The incident caused defendant to send plaintiff home before the end of his shift. As it stands, the summary judgment record is devoid of facts from which a reasonable jury could conclude that plaintiff's conduct qualified him to serve as lead man, or that he performed the job satisfactorily. *See Carpenter*, 2013 WL 6004171, at *5 (holding that plaintiff who violated company policies was not performing his job satisfactorily and, therefore, could not establish a prima facie case of discrimination). Thus, the Court concludes that plaintiff cannot satisfy the third element of a prima facie case of race or color discrimination under Title VII.

Similarly, the summary judgment facts lack any evidence from which a rational jury could infer that defendant treated plaintiff less favorably than similarly situated, nonminority employees. Indeed, plaintiff has failed to adduce any evidence showing that defendant ever gave preferential treatment to employees outside of his protected class. The record also lacks any evidence that defendant ever retained a nonminority employee who had committed similar violations of the Code of Conduct Policy.

Instead, plaintiff testified in his deposition that defendant, its management, and Mr. Reyna never mentioned his race or color during or after the March 6 confrontation. Plaintiff also conceded that the confrontation he admits engaging in violated defendant's Code of Conduct Policy and was the "true reason" that defendant terminated his employment. Doc. 26 at 15-16. The undisputed facts show that defendant terminated Mr. Reyna on the same day and for the same reasons that it terminated plaintiff. And while each man is a member of a protected class under Title VII, *see* 42 U.S.C. § 2000e-2(a)(1), defendant contends that this fact proves defendant applied discipline consistently across racial lines. Plaintiff never disputed this contention. Thus, based on the summary judgment record before it, the Court concludes that plaintiff cannot satisfy the fourth element of his discrimination claim.

Because no evidence in the summary judgment record satisfies the third or fourth elements required to establish a prima facie case of race or color discrimination under Title VII, the Court grants summary judgment against this claim.

**2. Plaintiff cannot establish a prima facie case of retaliation under Title VII.**

For his second claim, plaintiff alleges that defendant terminated his employment as retaliation for his written report describing the March 6, 2014 confrontation with Mr. Reyna. He asserts that this retaliation amounts to illegal retaliation forbidden by Title VII.

14

To establish a prima facie case of retaliation under Title VII, plaintiff must demonstrate: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged activity materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66-68 (2006)).

Viewing the summary judgment record to plaintiff's favor, the Court concludes that plaintiff cannot satisfy the first or third elements for a prima facie case of retaliation. Simply stated, there is no evidence that could permit a reasonable jury to infer that plaintiff's written report contained an allegation of discrimination. Plaintiff's report does not mention any discriminatory comments or actions by Mr. Reyna, defendant's management, or any other employee. Instead, it details a profane exchange instigated by a coworker whom plaintiff described as a "bully." Specifically, plaintiff's report, in relevant part, describes his problems with Mr. Reyna as follows:

> Ismeal has been [lashing] out a lot the past couple of months. There was another incident between Ismeal and Roy that wasn't reported. Also[,] another incident [where] Ismeal jumped off his forklift and proceeded to poke his finger in the throat of Mike Castro[,] another dock associate. His [lashing] out, [bullying], intimidating, and [ostracizing] [tactics] have to stop. I wasn't and will not ever let any man disrespect me when I was only doing what I was told to do.
>
> . . . .
>
> At the same time, Ismeal has always tried to provoke or push me to the next level and I had enough of his [bullying]! I don't and won't bully or put other people down for any reason. We are all here to do a job and get it done so we can all go home to our families.

Doc. 26-7 at 3-4. Plaintiff testified at his deposition that no one mentioned his race or color during or after the confrontation. Plaintiff also testified that he believes Mr. Reyna provoked him because he was jealous of plaintiff's promotion to lead man:

> Q. He had been the lead man, they took the lead away from him, and then they had just put you in the lead. He was jealous.
>
> A. Yes.
>
> Q. And according to the papers that you wrote, that's what caused him to come after you that night, March 6th, 2014, correct?
>
> A. Correct.
>
> Q. Based on everything you know, that's what you truly believe, right?
>
> A. Yes.

Doc. 26-1 at 30.

Title VII prohibits retaliation after an employee has protested discrimination based on race, color, religion, natural origin, or gender. *See Peterson v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002); 42 U.S.C. § 2000e-2. But it does not protect persons from a coworker's bullying that is unrelated to their membership in a protected class. *See id.* ("Title VII does not prohibit all distasteful practices by employers."). Because no evidence exists that plaintiff's report contained any allegation of discrimination prohibited by Title VII, the Court concludes that plaintiff cannot establish a prima facie case of retaliation. *See id.* ('[A]n employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII."); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (finding plaintiff failed to make a prima facie case of retaliation where he "fail[ed] to provide any evidence showing that he even made the complaints, much less that [his supervisors] knew of them."). The Court thus grants summary judgment against plaintiff's retaliation claim.

16

**B. Pretext**

Even if plaintiff had adduced evidence supporting each aspect of a discrimination or retaliation claim under Title VII, summary judgment is still appropriate because no facts exist in the summary judgment record that can support an inference of pretext. Under the *McDonnell Douglas* burden-shifting framework, if a plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for his termination. *See Khalik*, 671 F.3d at 1193. Defendant here has shown that it terminated plaintiff for engaging in a disruptive altercation with a subordinate employee in violation of the Code of Conduct Policy.

This shifts the burden back to plaintiff to show that defendant's explanation for his discharge is a pretextual one. *Id.* (citation omitted). Plaintiff may demonstrate pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations and internal quotation marks omitted). To survive summary judgment, plaintiff must raise a genuine issue of material fact whether the defendant's proffered reason is unworthy of belief. *Id.* at 1322. But "'mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'" *Id.* (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).

Plaintiff has failed to advance any fact or legal argument casting doubt on defendant's proffered reason for his termination. And the summary judgment record contains no evidence that would enable a rational jury to infer that defendant's reason is a pretext to hide an illegal discriminatory or retaliatory motive. Instead, the record shows that plaintiff has conceded that

his confrontation with Mr. Reyna violated defendant's Code of Conduct Policy and was the true reason for his termination. No genuine issue of material fact about defendant's proffered reason exists. Thus, even if plaintiff could establish a prima facie case to support either of his claims, the Court still would grant summary judgment against plaintiff.

## V. Conclusion

Defendant has shown that no genuine issues of material fact exist and it is entitled to judgment as a matter of law. The Court thus grants summary judgment against plaintiff's claims of race and color discrimination and retaliation.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 25) is granted.

**IT IS SO ORDERED.**

**Dated this 5th day of November, 2015, at Topeka, Kansas.**

s/ Daniel D. Crabtree_____
**Daniel D. Crabtree**
**United States District Judge**